DANIEL BOGDEN
United States Attorney
MICHAEL CHU
Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>v.<br><br>John Kane and Andre Nestor,<br>    Defendants. | Case No. 2:11-cr-00022-JCM-RJJ<br><br>**The United States' Response to<br>Defendants' Motions to Dismiss** |

The United States, by and through the undersigned attorneys, asks that defendants' motions to dismiss (Docket Nos. 56, 57 & 62) be denied.

**Background**

In 2009, defendants Kane and Nestor devised a way to exploit video poker machines by calling up previously played winning hands of cards. They exploited video poker machines from about April 2009 to September 2009 to win several hundred thousand dollars.

Video poker machines offer different varieties of poker for customers to play. To exploit the video gaming machines, defendants coaxed casinos into enabling the double up feature. Essentially, this feature allowed the customer to double their winnings or lose their bet. Defendants then legitimately played video poker until they obtained a winning hand of cards and collected their winnings. They were entitled to these winnings.

What they were not entitled to do, however, was to access this previously played hand of cards to collect a second set of winnings. Typically, defendants played video poker, making wagers

1

at the lowest denomination to minimize their losses. Once they were ready to exploit the video poker machine, defendants used a complex combination of game changes, bill insertions and cash outs to, among other things, access the previous winning hand of cards, change the denomination in the middle of the game to the highest denomination and trigger a second jackpot. Defendants thus collected a second, unearned jackpot by accessing the previous winning hand of cards.

## Discussion

**A. The Indictment sufficiently alleges a violation of 18 U.S.C. § 1030(a)(4)**

**1. The standard for a motion to dismiss**

Defendants' motions do not provide the standard for a motion to dismiss an indictment that fails to state an offense. This standard is as follows: An indictment is sufficient if it states "the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against him, primarily so that he can defend himself against the charge and plead double jeopardy in appropriate cases." *United States v. Johnson*, 804 F.2d 1078, 1084 (9th Cir. 1986) (citations omitted). Notice is the touchstone. Indictments must simply "be a plain, concise, and definite written statement of the essential facts of the offense charged . . . ." Fed. R. Crim. Pro. 7(c)(1).

Extrinsic evidence is not to be considered. "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).[1] "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the

---

[1] Defendants argue that the United States has "produced no evidence that the gaming machines are used in a manner which affects interstate commerce." Nestor Motion, p. 6 (adopted by Kane). Similarly, both defendants seek to introduce evidence. Nestor Motion Exhibits A & B; Kane Motion Exhibit 1. But "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). Put another way, a "motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . ." *Id.*

2

indictment in analyzing whether a cognizable offense has been charged." *Id*. "The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." *Id*.

### 2. A violation of 18 U.S.C. § 1030(a)(4) is sufficiently alleged

In this case, the Indictment (Docket No. 12) sufficiently alleges an offense. An indictment that sets forth the offense in the language of the statute itself and contains the necessary factual predicates is generally considered sufficient. *Johnson*, 804 F.2d at 1084-85 ("Because Johnson's indictment states the elements of § 2113(c), the approximate date on which Johnson received and possessed the stolen money, the approximate location of his receipt of the money, and the location of the bank from which it was stolen, it gave Johnson adequate notice to defend himself against the § 2113(c) charge. The indictment therefore meets the requirements of due process.").

Here, the Indictment tracks the language of 18 U.S.C. § 1030 (alleging that defendants "did knowingly and with intent to defraud access a protected computer exceeding his authorized access and by means of such conduct futhered the intended fraud and obtained something of value, specifically, money"). The Indictment also alleges sufficient information such as dates and a descriptions of defendants' actions. Thus, the Indictment sufficiently alleges a violation of 18 U.S.C. § 1030(a)(4).

### B. The video poker machines in this case are "computers"

If the Court seeks to reach the merits of defendants' arguments, defendants' motions should also be dismissed for the alternative reasons set forth below.

Defendant Kane argues that gaming machines are not "computers."[2] First, Kane argues that the gaming machine in question is not a computer because it is "not connected to the internet." Kane Motion, p. 6. Second, he argues that a gaming machine "does not serve the same functional

---

[2] Defendant Nestor concedes that "the gaming machines are probably 'computers' for the purposes of the CFAA." *See* Nestor Motion, p. 5.

3

aspect as a traditional computer [because] it does not store business information/data or communicate business [sic] with other machines." *Id*. Third, he argues that a gaming machine is not a computer because it "is not used to communicate information … and it is not regulated by a federal agency, but by state gaming boards." *Id*. at 7.

None of Kane's rationales, however, are what the law requires. The term "computer," as defined by 18 U.S.C. § 1030(e)(1), "means an <u>electronic</u>, magnetic, optical, electrochemical, <u>or other high speed data processing device</u> <u>performing logical, arithmetic, or storage functions</u>, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." (Emphasis added).

Section 1030's definition demonstrates that the video poker machines here are "computers." First, video poker machines are "electronic" devices. Alternatively, they have processors that "process" "data" at "high speed."

Second, by determining whether or not a customer has won a hand of poker, video poker machines perform functions that are both "logical" and "arithmetic." Alternatively, they also perform "storage" functions by storing electronic information such as slot tracking data, pay tables and records of games played.

It is fair to say that the essence of Defendant Kane's argument is that video poker machines are not "computers" because they do not conform to his perceptions of what should be a computer. But Congress used the term "computers" merely as shorthand for a much more complicated concept. In a sense, Congress did not seek to regulate computers; it sought to regulate "electronic, magnetic, optical, electrochemical, or other high speed data processing device[s]" that performed "logical, arithmetic, or storage functions." The term "computers" was just a label. For all these reasons, video poker machines are "computers."

4

**C. The video poker machines here are "protected" computers**

Defendants Kane and Nestor next argue that they did not access computers that were "protected." Under 18 U.S.C. § 1030(e)(2)(B), a computer is "protected" if it "is used in or affecting interstate commerce or communication ...."[3]

Under this definition, gaming machines are protected because they do affect interstate commerce. Customers from all over the country travel to Nevada to play Las Vegas' gaming machines. Indeed, as the Indictment alleges, defendant Nestor traveled from Pennsylvania to Nevada for the express purpose of playing these gaming machines. Because gaming machines affect interstate commerce, they are "protected" computers.

Finally, defendants try to distinguish the 7th Circuit's holding that devices such as emergency radio systems are protected computers because they are subject to federal regulation. *United States v. Mitra*, 405 F.3d 492 (7th Cir. 2005) (radios regulated by the FCC). Defendants argue that "No Federal Agency regulates video poker machines," but this is incorrect. The U.S. Department of Justice, Office of Enforcement Operations (Gambling Devices Registration Unit) does regulate gaming machines pursuant to the Gambling Devices Act of 1962 (15 U.S.C. § 1171-78). As *Mitra* demonstrates, because video poker machines are subject to federal regulation, they are "protected" computers.

**D. Defendants "accessed" video poker machines**

Defendants next, in passing, argue they did not "access" the video poker machines, claiming "[t]here is no evidence Mr. Nestor accessed or manipulated the information contained within the

---

[3] Defendants argue that the United States has "produced no evidence that the gaming machines are used in a manner which affects interstate commerce." Nestor Motion, p. 6 (adopted by Kane). Again, a motion to dismiss is inappropriate on this issue because defendants' arguments pose a question of fact. Jensen, 93 F.3d at 669 ("[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence").

5

gaming machines's processor …." Nestor Motion, p. 10.  Again, defendants cannot dismiss an indictment by arguing that there is insufficient evidence.  *Jensen*, 93 F.3d at 669.

That said, defendants accessed the video poker machine when they used it; that is, when they played video poker as the Indictment alleges.  This is analogous to when an employee accesses a computer by simply using it.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009) (noting that "an employer gives an employee 'authorization' to <u>access</u> a company computer when the employer gives the employee permission to <u>use</u> it." (emphasis added)).

In fairness, the question of "access" was not the focus of *Brekka*'s analysis, but the 9th Circuit's usage suggests that it viewed the *Brekka* defendant's use of his employer's computer to be well within the definition of "access."  Similarly, it appears that few, if any, cases analyze 18 U.S.C. § 1030's definition of the term "access"; this too suggests that for the majority of cases, whether a defendant's use of a computer is considered "access" is simply not considered to be an issue.  For the purposes of this case, because defendants played video poker on the machines – and thus, used the keypad, bill collector, and touch screen to interact with the video poker game software and the information stored on the device – they "accessed" the video poker machines.

**E.  Defendants "exceeded their authorized access" to the video poker machines**

Defendants are charged with exceeding their authorized access to the casinos' video poker machines.  By statute, the phrase "exceeds authorized access" is defined to mean "(1) to access a computer with authorization and (2) <u>to use such access to obtain or alter information</u> in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6) (emphasis and numbering added).  The first prong focuses on the hardware (the computer); the second prong focuses on the information inside.

Respectfully, a close examination of the statute shows that defendants' arguments that they were authorized to access the video poker machines 24 hours a day is irrelevant – of course,

6

defendants were authorized to access and play video poker on the gaming machines.[4] This is required by the first prong of Section 1030(e)(6)'s definition ("exceeds authorized access" is defined to mean "(1) to access a computer with authorization ….").

The question is whether the defendants used their access "to obtain or alter <u>information</u> in the computer that the [defendants were] not entitled so to obtain or alter." The focus here is on the second prong of Section 1030(e)(6)'s definition. To determine if defendants were entitled to "obtain or alter information," the Court should consider whether the casinos authorized defendants to "obtain or alter information" such as obtaining previously played winning hands of cards or to alter the denomination in the middle of the game, etc.

### 1. The 9th Circuit looks to what the grantor has chosen to permit

First, in determining whether the defendants were entitled to obtain previously played hands of cards, the Court should look to what the <u>grantors</u> of the access (here, the casinos) have chosen to permit. *Brekka*, 581 F.3d at 1135 ("authorization" means "permission or power granted by an authority.").

Although defendants cite *Brekka* to support their argument here, *Brekka* has limited applicability to this issue because the court's holding did not focus on whether the defendant "exceeded authorization." 581 F.3d at 1129 n.7 (noting that on appeal, the employer only argued that Brekka was "without authorization"). In contrast, this case is an "exceeded authorization" case. Instead, *Brekka*'s significance here is that it focuses on what level of access the <u>grantor</u> (there, the employer) chose to bestow on the user.[5]

---

[4] 18 U.S.C. § 1030(a)(4) focuses on one of two categories: (1) was the defendant "without authorization" to access the information? Or (2) did the defendant "exceed his authorization" to access the information? The Indictment charges the latter.

[5] *Brekka* is also largely inapplicable because its holding focuses on whether an employee who breaches his fiduciary duty of loyalty to his employer somehow loses his otherwise normal authorization to access his employer's computers. This issue does not apply here.

7

Defendants also cite *United States v. Nosal*, 642 F.3d 781 (9th Cir. 2011). *Nosal* is under *en banc* review (661 F.3d 1180 (9th Cir. 2011)), so it is prudent to explain why that case is relevant, but in a way that is unlikely to be affected by the *en banc* review.

Like this case, *Nosal* is an "exceeding authorized access" case. But it is distinguishable in one important respect: *Nosal* dealt with a situation where an employee (a) was permitted to access his employer's computer, (b) was permitted to "obtain or alter" his employer's information, but (c) was limited by his employer's use restrictions in how he was allowed to use that information. *Nosal*, 642 F.3d at 785. Essentially, *Nosal*'s holding inferred another step that is not explicitly set forth in Section 1030(e)(6): that even if an employee is permitted to "obtain or alter information," under *Nosal*, the employee may still exceed his authorized access if she uses that information against the employer's rules. This situation does not apply in this case because defendants were (a) permitted to access the video poker machines, but (b) were never permitted to "obtain or alter" information such as previously played hands of cards.

Ultimately, *Nosal*'s significance to this issue is that, like *Brekka*, that case focused on what permissions the grantor (the employer) chose to bestow. *Nosal*, 642 F.3d at 788 (noting that *Brekka* "held unequivocally that under § 1030 the employer determines whether an employee is authorized." (emphasis in original)).

**2. Here, the casinos did not authorize defendants to access prior games**

In determining what permissions a grantor has chosen to permit, context is important. Because *Brekka* and *Nosal* were employer-employee cases, the 9th Circuit looked to the ways that the grantor (the employer) granted or limited access. In the context of employer-employee relations, there are many ways an employer traditionally limits an employee's ability to use their employer's computers "to obtain or alter information": terms and conditions, employment agreements, job

descriptions, management supervision, password protection, encryption, etc.  However, these are not the only ways in which a grantor can grant or limit the access of users.

In this case, the Court should look to the ways in which casinos have chosen to grant or limit their customers' ability "to obtain or alter information" in video poker machines.  Here, the casinos authorized defendants to use video poker machines to wager money, to obtain information in the form of a randomly generated hand of cards, to alter that information by keeping or discarding cards, etc.  In short, the casinos authorized defendants to play video poker.

What the casinos did <u>not</u> do was to authorize defendants "to obtain or alter information" such as previously played hands of cards.  To allow customers to access previously played hands of cards at will, would remove the element of chance and obviate the whole purpose of gambling.  It would certainly be contrary to the rules of poker.[6]  Further, video poker machines were set up to resist any attempt to access previously played hands (cabinets were locked, guards were employed, etc.).  Ultimately, it cannot be said that defendants were somehow authorized "to obtain or alter information" such as previously played hands of cards.

**E.  Section 1030(a)(4) is not unconstitutionally vague**

Finally, defendants argue that Section 1030(a)(4) is unconstitutionally vague because *Brekka* and *Nosal* offer "competing definitions of 'access' and 'excceeds authorized access….'"  Nestor Motion, p.11.  The United States respectfully disagrees.

**1.  *Brekka* and *Nosal* do not conflict**

First, *Brekka* and *Nosal* do not offer "competing definitions" because they analyze different issues.  *Brekka* is a "without authorization" case.  581 F.3d at 1129 n.7 (noting that on appeal, the employer only argued that Brekka was "without authorization").  In contrast, *Nosal* is an "exceeding

---

[6] For the record, counsel for the United States' knowledge of video poker stems solely from this case.

authorization" case. 642 F.3d at 785 ("We are not faced in this appeal with an argument that Nosal's accomplices accessed the Searcher database 'without authorization.'"). These cases do not offer "competing definitions."

Defendants also argue that *Brekka* and *Nosal* conflict, by claiming that *Nosal* "seems to indicate that the mere act of going beyond the scope of access as proscribed by an employer violates § 1030, regardless of whether the employee exceeds her access for the purpose of obtaining information to which she is not entitled." Nestor motion, p. 9. In their haste to manufacture a conflict, however, defendants misread *Nosal*. There, the 9th Circuit did emphasize "an employee exceeds authorized access under § 1030(e)(6) when the employee uses that authorized access 'to obtain or alter information in the computer that the accesser is not entitled [in that manner] to obtain or alter." *Nosal*, 642 F.3d at 785-86.

**2. Defendants' cases do not show conflicting definitions**

Second, although defendants claim that "courts across the country have reached divergent conclusions" about what these terms mean, defendants only cite two cases – neither of which supports their argument. Defendants' first case, *State v. Allen*, 917 P.2d 848 (Kan. 1996), interprets a state statute, not 18 U.S.C. § 1030, so it can hardly be taken as evidence that Section 1030(a)(4) is unconstitutionally vague. Similarly, in defendants' second cited case, *Moulton v. VC3*, 2000 WL 33310901 (N.D. Ga. 2000), the court granted summary judgment after analyzing whether there was evidence to support the element of "damage." Because the definitions of "access" and "exceeds authorized access" were not litigated, defendants again cannot argue that *Moulton* shows that the terms are unconstitutionally vague.

**3. Vagueness cannot be proved by merely pointing to undefined or broad language**

Defendants cannot prove vagueness merely by pointing to undefined words in the statute and declaring that they could be read in more than one way. As the U.S. Supreme Court noted,

10

"Condemned to the use of words, we can never expect mathematical certainty from our language"; thus, the lack of a definition and the inherent limitations of the English language do not render a statute vague. *Grayned v. City of Rockford*, 408 U.S. 104, 112 & n.15 (1972)(citations omitted).

What defendants really argue is that the words are broad, but a defendant cannot make a vagueness challenge to a statute simply by claiming that it uses broad language. As the Seventh Circuit said in rejecting a similar challenge to section 1030 for being unconstitutionally vague,

> [Defendant's] problem is not that § 1030 has been turned in a direction that would have surprised reasonable people; it is that a broad statute has been applied exactly as written, while he wishes that it had not been. There is no constitutional obstacle to enforcing broad but clear statutes. *See Rogers v. Tennessee*, 532 U.S. 451, 458-62 (2001) (discussing Bouie's rationale and limits). The statute itself gives all the notice that the Constitution requires.

*United States v. Mitra*, 405 F.3d 492, 496 (7th Cir. 2005) (Easterbrook, J.) (rejecting vagueness challenge to Section 1030's definition of "computer"). As defendants note, notice is what the Due Process Clause requires. Nestor Motion, p. 11 (noting that vagueness arises if a statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited"). Ultimately, broad and narrow terms alike put defendants on notice that certain conduct is prohibited, and thus, both satisfy the Due Process Clause. Section 1030(a)(4) is not unconstitutionally vague.

**Conclusion**

For these reasons, the United States asks that defendants' motions to dismiss be denied.

Dated:  January 20, 2012.

    Respectfully submitted,

    DANIEL BOGDEN
    United States Attorney

    /s/
    _____
    Michael Chu
    Assistant U.S. Attorney

11