ANDREW M. LEAVITT, ESQ.
Nevada Bar #3989
Law Office of Andrew M. Leavitt, Esq.
633 South Seventh Street
Las Vegas, Nevada 89101
(702) 382-2800

## UNITED STATES DISTRICT COURT
## CLARK COUNTY, NEVADA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    2:11-cr-00022-JCM-RJJ

JOHN KANE;
ANDRE NESTOR.

        Defendants

## REPLY TO UNITED STATES RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS

    Certification: This Reply is timely filed.

    COMES NOW, the above-named Defendant, JOHN KANE by and through his undersigned attorney, ANDREW M. LEAVITT, ESQ., and hereby replies to the United States Response to the Defendant's Motion to Dismiss.  (The Defendant, John Kane also joins in any reply filed by the Defendant, Andre Nestor.)

    This Reply is made based upon the Points and Authorities attached hereto, the pleadings and papers on file herein and upon such further evidence that may be presented at

//

//

//

//

//

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

1

the hearing of this Motion.

DATED this 16th day of February, 2012.

Law Office of
ANDREW M. LEAVITT, ESQ.

/s/ Andrew M. Leavitt

_____
ANDREW M. LEAVITT, ESQ.
Nevada Bar # 3989
633 South Seventh Street
Las Vegas, Nevada 89101

## INTRODUCTION

Congress enacted the Computer Fraud and the Abuse Act to curb computer hacking.  See S.Rep.No. 99-432 at 2-3 (1986), reprinted in 1986 U.S.C.C.A.N. 2479, 2480-2481.  When the Computer Fraud and Abuse Act was enacted, "computer crime" was considered a new type of crime that existing criminal laws were insufficient to address.  See S.Rep.No. 99-432 at 2 (1986) reprinted in 1986 U.S.C.C.A.N. 2479.  For example, exceeding one's authorized access to a computer by hacking into a drive that one was never authorized to access would be a "computer crime" which congress intended to proscribe.  See also United States v. Nosal, 642 F.3[rd] 781, 791 (9th Cir. 2011).

Based on a violation of § 1030(a)(4), the Government must show that John Kane: (1) accessed a "protected computer", (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with intent to defraud and thereby (4) furthered intended fraud and obtained anything of value, causing (5) a loss to one of more persons during any one year period aggregating at least $5,000.00 in value.  The Government cannot show that John Kane accessed a "protected computer".  It is impossible for the

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

Government to show that John Kane accessed a protected computer, "without authorization or exceeded such authorization that was granted".

John Kane never engaged in any "computer hacking", a video poker game in a Las Vegas casino is not a "computer" nor a "protected computer", the Defendant had unlimited access to the video poker game 24 hours a day 7 days a week which is admitted to by the Government. As a result of having unlimited access, Mr. Kane's access was never "restricted" or "limited" in any way and as a result, it is impossible in the 9th Circuit for the Defendant to have "exceeded his authorized access" to the video poker games that he played and of which, he has been charged with in violating the Computer Fraud and Abuse Act.

As will be shown below, in the facts in this case, it is legally impossible to charge John Kane with violating the Computer Fraud and Abuse Act, thus necessitating the filing of the Motion to Dismiss.

## STATEMENT OF FACTS

The facts in this case, for purposes of this motion only, are not disputed. The Defendant played the video poker machines exactly the way there were programmed to play. According to the Gaming Control Board, in their alleged investigation, Mr. Kane never "devised a way to exploit video poker machines". The Defendant simply played the machines exactly the way they were programmed to be played. The video poker machines that Mr. Kane was playing came equipped with a double up feature. Most of these machines already had a double up feature in place and on a very few occasions, the cashiers were asked to simply "enable" the double up feature. This is not illegal. Any customer at any time could have asked any cashier in any casino to enable this feature. Most video poker machines come equipped with the double up feature and to this day, an individual can go to a casino

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

3

and play a video poker machine with the double up feature. The casinos gave Mr. Kane "access" to the double up feature.

It is also counsel's understanding that there was never a "second set of winnings". The machine was played until the winning hand was displayed. The winning hand was never collected. Simply, by pressing different buttons on the machine, the winning hand was increased to a larger jackpot.

There was no "complex combination of game changes, bill insertions, and cash outs" and there was never a "second jackpot". The winning wager was simply changed from a smaller amount to a larger amount. In other words, if an individual is playing a twenty five cent machine and won a hundred quarters, the jackpot could be changed to one dollar to win one hundred dollars. (See exhibit "1" attached to the Defendant's Motion to Dismiss, Laboratory Report from the Gaming Control Board).

According to the Gaming Control Board's alleged investigation, this was accomplished by simply hitting the cash out button, inserting a dollar or any other denomination of bill into the bill collector and then changing the game from a twenty five cent game to a one dollar game. This was not accomplished with "a complex combination of game changes, bill insertions, and cash outs". This was accomplished with **"approved software"** by the manufacturer and by the Gaming Control Board. Even if there was a "second set of winnings" or anything else the Government alleges, Mr. Kane was given unrestricted and unlimited "access" to all of this by the casinos!

Again, the Defendant played the machines exactly the way they were designed to be played, a video poker machine in a casino is not a "computer" and even if it was a computer it is not a "protected" computer and even if the video poker machine is a protected computer, there was no "unauthorized access" to the computer. Finally, the statute that the

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

Government is utilizing against the Defendants is unconstitutionally vague and ambiguous and cannot be used against the Defendant in these circumstances.

## LEGAL ARGUMENT

### I.

### THIS COURT CAN PROPERLY RULE ON THE DEFENDANT'S MOTION TO DISMISS

Federal Rule of Criminal Procedure, Rule 12(b)(2) provides that "a party may raise by pretrial motion any defense, objection or request that the court can determine without a trial of the general issue". Because a question of law presented in a case involving undisputed facts can be determined without a trial of the general issue, rule 12 authorizes a district court to rule on a motion to dismiss. Further, if a question of law is involved, the consideration of a motion to dismiss is generally proper and a district court may make preliminary findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact. See United States v. Shortt Accountancy Corporation, 785 F.2d 1448, 1452 (9th Cir. 1986). See also concurring opinion in U.S.v. Jensen, 93 F.3d 667 (1996).

The United States Supreme Court in United States v. Covington, 395 U.S. 57, 60-61, 89 S.Ct. 1559, 23 L.Ed. 2d 94 (1969) involved a defendant that filed a pretrial motion to dismiss the indictment on the ground that he had a complete defense in that his 5th amendment privileges against incrimination had been violated. The district court granted the motion and dismissed the indictment. The Government appealed to the Supreme Court, which rejected the Government's contention that the dismissal was improper and affirmed the District Court. The United States Supreme Court found that the District Court properly ruled on the pretrial motion because it involved an issue of law, not a factual dispute. The Supreme Court further noted that under Federal Rule of Criminal Procedure 12, a defense is

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

"capable of determination without the trial of the general issue... if trial of the fact surrounding the commission of the alleged offense would be of no assistance in determining the validity of the offense". Id at 395 U.S. 60. Rule 12(b) permits factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion. Id at 60.

As previously stated, the facts in this case are not disputed. The Defendant allegedly pushed different buttons on the video poker machine at different times and in different sequence, thus increasing his jackpot winnings. The machines were played the way that the manufacturer designed them to be played. There was no internal or external manipulation of the games, there was no magnet, hanger, false coins, or any other "foreign thing" that was utilized to play the video poker machine. Basically, the Defendant found a way to win by utilizing the computer program that was put into the machine. It is not disputed that Mr. Kane was given unrestricted and unlimited "access" to these machines.

Lastly, the two cases in the 9th Circuit that interpret the Computer Fraud and Abuse Act were both appeals by the Government or the employer from motions to dismiss that were granted in the District Court. See LVRC Holding LLC v. Brekka, 581 F.3d 1127 (9th Cir. 2009) and United States v. Nosal, 642 F.3d 781 (9th Cir. 2011). Both cases give an excellent interpretation of the CFAA and give a detailed explanation of what "exceeds authorized access" means.

## II.

## A VIDEO POKER GAME IS NOT A "COMPUTER" NOR A "PROTECTED COMPUTER"

**(A)     A VIDEO POKER GAME IS NOT A "COMPUTER" IN THE SENSE THAT THE COMPUTER FRAUD AND ABUSE ACT REQUIRES.**

In the Government's response to the Defendant's Motion to Dismiss the Government does not cite any case law to indicate that a video poker game is a "computer".

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

6

Further, the Government only cites to one case, United States v. Mitra, 405 F.3d 492 (7th Cir. 2005) to argue that a video poker game is a "protected computer".

A video poker game in a Las Vegas casino is not a "computer". A video poker machine does not have a keyboard, an individual cannot communicate with it, it does not "read" anything, it does not accept "new" information, it is not part of a network, it is not part of the internet, it is simply a "game" that is played. It is a game whose sole purpose is to make sure the player looses.

If a video poker machine is a "computer" then every single machine or electronic game in a casino could arguably be a "computer". This would include slot machines, keno machines, video roulette machines, video black jack machines, electronic pinball machines, all video games, an electronic cash register, a child's hand held video game, (Nintendo DS; Gameboy, etc.) essentially any modern machine that is "electronic". A video poker machine would be more like a portable hand held calculator that is electric and plugs into a wall. These types of devices were specifically excluded in the definition of a "computer". (See U.S.C.A. § 1030 (e)(1), the term "computer" does not include an automatic typewriter or typesetter, a portable hand held calculator, or other **"similar device"**) A video poker machine is a "game" that is played over and over again. It is not a "computer". It is a "similar device" to a hand held calculator.

In fact, a video poker machine is almost identical to a handheld calculator. With a handheld calculator you cannot program the calculator. With a video poker machine the player cannot program the video poker machine. In a handheld calculator the program cannot be changed. In a video poker machine, the program cannot be changed by the player. A handheld calculator cannot accept "new information", but can only calculate what has previously been included in the program. A video poker machine cannot accept "new

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

7

information" but can only calculate what it was previously programmed to do. A handheld calculator cannot print out anything other than what is in its program. A video poker machine cannot print out anything other than a winning ticket. A handheld calculator's program cannot be changed by the user. A video poker machine's program cannot be changed by the player. It is respectfully submitted that a video poker machine is almost identical to a handheld calculator, except for the handheld calculator does not take all of an individual's money. It is a "game" that is played, the same as a child's Nintendo or Gameboy. The same game is played over and over again.

Finally, one cannot email, download, insert a disc in, print out or otherwise steal or take without authorization, information or trade secrets from a video poker game in a casino. This is why a video poker game cannot fit into the definition of a "computer" under the Computer Fraud and Abuse Act. As a result of being unable to take any information from a video poker game, it is impossible for a person to "exceed authorized access" in a video poker game. One can only play what the video poker games program allows you to play. (This will be discussed further under the exceeding authorized access element of the Computer Fraud and Abuse Act set forth in this Motion).

Surely, Congress did not intend that every electronic thing in a casino, an electronic cash register, a child's Nintendo and Gameboy, would be a "computer" under the statute. This would **not** be something that would contain information that has been determined by the United States Government pursuant to an executive order or statute to require protection against unauthorized disclosures. It would not have anything to do with national defense or foreign relations. It has nothing to do with the Atomic Energy Act of 1954. It has nothing to do with injury to the United States or to the advantage of any foreign nation. It has nothing to do with financial records of a financial institution. It has nothing to

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

do with a department or agency of the United States and it is a stretch of the imagination to believe that Congress intended that a video poker game in a Las Vegas casino would be included and protected under this act.  Otherwise, the term "computer" as defined under the statute would not exclude the portable handheld calculator or **"other similar device"**.

**(B)**     **A VIDEO POKER GAME IN A LAS VEGAS CASINO IS NOT A "PROTECTED COMPUTER" UNDER THE COMPUTER FRAUD AND ABUSE ACT.**

Even if a video poker game, which has no keyboard, accepts no new information, that was not "hacked into" and is not part of a network or the internet, can somehow be argued to be a "computer", a video poker game is not a "protected computer".

The term "protected computer" is defined as a computer exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects the use (18 U.S.C.A. § 1030(2)(A)) by or for a financial institution or the Government.  A video poker game does not fit in this definition.

A computer which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that protects interstate or foreign commerce or communication of the United States.  (18 U.S.C.A. §1030(2)(B)).  A video poker game does not fit in this definition.

A video poker game in a Las Vegas casino has nothing to do with a financial institution or the United States Government, it is not a computer  located outside of the United States that is used in a manner that affects interstate or foreign commerce and it is certainly not a computer that affects the communications of the United States.  A video poker game in a Las Vegas casino is not used in or affecting foreign commerce or communications.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

The only possible thing that could be argued in this case is that a video poker game in a Las Vegas casino **"is used in or affecting interstate commerce"**.

For a video poker game to qualify under the statute the Government would have to show that it is "used in or affecting interstate commerce". Further, the Government would have to show that Mr. Kane's actions in utilizing and playing video poker games affected interstate commerce.

The Government in its Response to the Motion to Dismiss, basically indicates that gaming machines are protected because they do affect interstate commerce because "customers from all over the country travel to Nevada to play Las Vegas gaming machines". (See page 5 of the Government's response). There is no case law that is cited for this interesting argument. Additionally, the Government fails to point out how Mr. Kane's actions in utilizing and playing the video poker games in this case "affected interstate commerce". The actual machine does not affect interstate commerce and Mr. Kane's play of various machines did not affect interstate commerce.

The Government does not state in its response that it is arguing that the video poker machines are "protected computers" because they are connected to the internet. All the cases that deal with the definition of a "protected computer" have found that a computer is "protected" if it is connected to the internet.

The Government instead argues that video machines are "protected" because they do affect interstate commerce. Customers from all over the country travel to Nevada to play Las Vegas gaming machines. There is no evidence in this case that Mr. Kane traveled across state lines to play these video poker machines. In the Government's response, the Government does not argue or set forth any facts of how Mr. Kane's playing of the poker

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

machines in Las Vegas affected customers from all over the countries travel to play Las Vegas gaming machines.

The commerce clause of the Constitution grants Congress the power to regulate interstate commerce. See United States Constitution, Article I, Section 8, cl.3. This includes the ability to regulate channels of interstate commerce, instrumentalities of interstate commerce and those activities that "substantially affect interstate commerce". See United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624 131 L.Ed.2d 626 (1995). The Government has not set forth any facts in its Response as to how Mr. Kane's activities "substantially affect interstate commerce". There is no evidence and no facts that would substantiate that Mr. Kane's activities in playing the video poker games in this case in any way, shape or form "substantially affect" interstate commerce.

In U.S. v. Mitra, 405 F.3d 492 (7th Cir. 2005) the Defendant interfered with a radio system that was operating on the Spectrum licensed by the FCC. This interference met the statutory definition because the interference affected "communication".

In this case, the Government is basically arguing that since the U.S. Department of Justice, Office of Enforcement Operations (Gambling Devices Registration Unit) regulates gaming machines that they are somehow "protected" computers. (See page 5 of the Government's response). The Gambling Devices Act of 1962 regulates the transportation of gambling devices, registration of manufacturers and dealers, labeling and working of shipping packages, penalties, and the confiscation of gambling devices and means of transportation which do not comply with the acts regulations. Further, the Gambling Devices Act specifically excludes licensed gambling establishments where betting is legal under applicable state laws. This would include Nevada.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

11

Nowhere in the Gambling Devices Act of 1962 does it provide for penalties for someone who is allegedly cheating on a video poker machine.  Mr. Kane is not charged with transporting a gambling device across state lines, the failure to register of a dealer or a manufacturer of a gambling device or of manufacturing, repairing, selling or possessing prohibited gambling devices.  The Gambling Devices Act of 1962 has nothing to do with this case and the video games that were utilized in this case were not used in interstate commerce and as a result the analysis and the reasoning under <u>Mitra</u> do not apply to this case.

The video poker games were not connected to the internet and there is no factual nexus to establish that Mr. Kane "substantially" affected interstate commerce.  Therefore, the video games are not "protected computers".

## III.

## <u>JOHN KANE DID NOT ACCESS THE VIDEO POKER GAMES WITHOUT AUTHORIZATION</u>

In <u>LVRC Holdings, LLC v. Brekka</u>, 581 F.3d 1127 (9th Cir. 2009) the court gives an excellent analysis of the Computer Fraud and Abuse Act.  This case involves a civil case wherein the Honorable Kent J. Dawson granted summary judgment, which was appealed by the employer, LVRC Holdings.

Brekka was an employee at an addiction treatment center who was negotiating with his employer, LVRC Holdings for the purchase of an ownership interest in the business.  During the course of those negotiations, Brekka emailed several business documents to his and his wife's personal email accounts.  The negotiations broke down and Brekka left his employment with LVRC.  LVRC later discovered the emails Brekka had sent himself and sued him under 18 U.S.C. § 1030(B) which provides for a private right of action under the Computer Fraud and Abuse Act.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

12

The court in <u>Brekka</u> held that it is the employer's action that determines whether an employee acts without authorization to access a computer in violation of the Computer Fraud and Abuse Act.

Even though this case is a civil case, the court in <u>Brekka</u>, stated the court's interpretation of 18 U.S.C. § 1030(A)(2)(4) is equally applicable in the criminal context and indicated that where a statute "has both criminal and non-criminal applications, courts should interpret the statute concisely in both criminal and non-criminal context". <u>Id</u> at 1134. The court further reasoned that it is well established that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity". The rule of lenity which is rooted in considerations of notice, requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government. <u>Id</u> at 1134-1135.

The court in <u>Brekka</u> specifically held that:

> A person uses a computer "without authorization" under § 1030 (A)(2)(4) when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access a computer and the defendant uses the computer anyway. <u>Id</u> at 1135.

In this case, assuming that a video game is a "computer", Mr. Kane was granted unlimited and unrestricted permission to use the video poker game and it has not been argued by the Government that he did not have unrestricted and unlimited permission to use the video game 24 hours a day, 7 days a week.

Accordingly, the only way Mr. Kane could have violated the Computer Fraud and Abuse Act is if his use of the video poker game "exceeded his authorized access". This is acknowledged and admitted by the Government on pages 6-7 of the Government's Response.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

13

## IV.

## JOHN KANE DID NOT EXCEED HIS AUTHORIZED ACCESS TO UTILIZE THE VIDEO POKER MACHINES

Having acknowledged that Mr. Kane had authorized access to play video poker machines, the Government in its response then attempts to argue that the Defendants "exceeded their authorized access". (See Government's Response pages 6-9.)

The 9th Circuit in Brekka, also dealt with the same exact problem that the Government is having in this case in interpreting what "authorization" means and what "exceeds authorized access" means. The court went on to state that:

> The definition of the term "exceeds authorized access" from § 1030(e)(6) implies that an employee can violate employer-placed limits on accessing information stored on the computer and still have authorization to access that computer. **The plain language of the statute therefore indicates that "authorization" depends on actions taken by the employer.** (emphasis added) Id at 1135.

Likewise, in this case, to determine whether Mr. Kane "exceeded authorized access" would depend on actions taken by the casinos and if the casinos had not rescinded the Defendants right to use the "computer" (the video poker machine) Mr. Kane would have no reason to know that he was committing a criminal violation of the Computer Fraud and Abuse Act.

Again, there are no real factual disputes in this case. The Government concedes that Mr. Kane had "authorization" to play the video poker games. The casinos never rescinded or limited the Defendants' right to use the video poker machines and as a result, Mr. Kane did not "exceed authorized access". See LVRC Holdings, LLC v. Brekka, 581 F.3rd 1127 (9th Cir 2009) In the civil context as set forth in Brekka, because the employer did

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

not rescind the employee's right to use the computer, the employer could not argue that the employee "exceeded authorized access". "Authorization" depends on actions taken by the employer. Likewise, in this case, "authorization" depends on actions taken by the casino and since the casino never rescinded the Defendants' right to use the video poker games, the Government cannot argue that Mr. Kane somehow "exceeded authorized access".

The Government attempts to argue that the Defendants "exceeded their authorized access" by using their access to "obtaining or altering information". (See page 6 of the Government's Response)  As previously set forth in the Defendant's original Motion to Dismiss and the Gaming Control Report attached to the Motion to Dismiss, Mr. Kane never utilized his access to "obtain or alter any information in the computer that the accesser was not entitled to obtain or alter". Mr. Kane did not steal any technology from the video poker machine, he did not download any information from the video poker machine, he did not use any "foreign thing" to manipulate the video poker machine, and he never did anything to the video poker machine that he was not entitled to obtain or alter. **Mr. Kane played the video poker machine exactly the way the video poker machine was designed to be played and programmed to be played.** The fault lies with the Gaming Control Board and/or the manufacturer of the machine that programmed the machine. If prior games could allegedly be "accessed", the casinos authorized this by placing defective machines in their casinos.

If the casinos did not want people playing a game in a certain fashion, they should have put in machines that prevented this type of play! Mr. Kane simply pushed buttons in a different sequence and Mr. Kane did nothing that "exceeded his authorized access". Mr. Kane had access to play the video poker machines, just like any other patron in the casino, 24 hours a day, 7 days a week.

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

As can readily be seen and as will be stated again here, the Computer Fraud and Abuse Act was obviously not intended to encompass a video poker game in a casino which is not a "computer" where someone can "exceed their authorized access". The Act was not designed, authored or intended for this type of factual pattern.

The Government's response requests that "the court should consider whether the casinos authorized the Defendants to obtain or alter information such as obtaining previously played winning hands of cards or to alter the denomination in the middle of the game, etc." (See page 7 of the Government's Response). As set forth in Brekka, the analysis depends on actions taken by the employer (in this case the casinos) and whether the employer (casinos) rescinded the defendant's right to use the computer. In this case, it is not whether the casinos authorized Mr. Kane to "obtain or alter information", the question is whether the casinos ever rescinded or limited Mr. Kane's right to use the computer (video game) to begin with.

The Government attempts to convince this court that the Brekka case has limited applicability to the issues in this case because the court's holding did not focus on whether the Defendant "exceeded authorization". This is simply not true. A close reading of the Brekka opinion clearly demonstrates that the court specifically held what "without authorization" means and specifically held what the definition of the term "exceeds authorized access" means. Id at Brekka 1135. The court reasoned that since Brekka (the employee) was using the computer with authorization, that he could not have "exceeded authorized access" without actions taken by the employer and if the employer had not rescinded Brekka's right to use the computer Brekka would have no reason to know that making personal use of the company computer would constitute a criminal violation. Id at 1135.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

Simply, a person cannot "exceed authorized access" when a person has received unrestricted and unlimited access to use the computer (video game) and this access was never rescinded by the casino and the casino took no action to in any way to limit Mr. Kane's access.

What the Brekka case basically stated was that an individual cannot exceed authorized access, without the access being limited to begin with. In this case, Mr. Kane's access, as previously stated, was never limited in any way and this is admitted to by the Government.

Brekka was later further clarified by the 9th Cir. In United States v. Nosal, 642 F.3rd 781 (9th Cir 2011). The Nosal case was a criminal case that dealt with an employee that left a company, violated a Separation and General Release Agreement and engaged the help of three employees of the company to obtain trade secrets and other proprietory information by using their user accounts to access the company's computer system. The difference between Brekka and the Nosal case is that the company required all of its employees to enter into an agreement and restricted the use and disclosure of all company information, except for legitimate company business. The company also had a computer system which identified and informed its users that the information in the computer system was the property of the company and that an individual needed specific authority to access any of the company's system or information and to do so without the relevant authority would lead to disciplinary action or criminal prosecution. See Nosal, Id at 783.

The Court in Nosal, recognized that the question of what "exceeds authorized access" means described "two lines of diverging case law on the issue". The court specifically stated that:

> Some courts, including two courts of appeal, have broadly construed the CFAA to hold an

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

17

employee acting to access an employers computer to obtain business information with intent to defraud, I.E., for their own personal benefit, or for the benefit of a competitor, act "without authorization" or "exceed authorization" in violation of the statute.  These courts have generally held that **authorized access to a company computer terminated once an employee acted with adverse or nefarious interests** and against the duty of loyalty imposed on an employee in an agency relationship with his or her employer or former employ-er.

Other courts have refused to hold employees with access and nefarious interests within the statute, concluding that a violation for accessing a protected computer "without authorization" or in "excess of authorized access" occurs **only when initial access or the access of certain information is not permitted in the first instance.**  Those courts have generally reasoned that the CFAA is intended to punish computer hackers, electronic trespassers and other "outsiders" but not employees who abuse computer access privileges to misuse information derived from their employment. Id at 784.

The 9th Circuit has adopted the former approach and has ruled that "in excess of authorized access" occurs only when initial access or the access of certain information is not permitted in the first instance.  Mr. Kane's access to these video poker games was never limited, Mr. Kane was not an "electronic trespasser" nor was Mr. Kane an "outsider".

The court in Nosal when interpreting the Brekka decision specifically stated that:

Because LVRC had not notified Brekka of any restrictions on his access to the computer, Brekka had no way to know whether-or when- his access would have become un-authorized. **Therefore, as long as an employee has some permission to use the computer for some purpose, that employee accesses that computer with**

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

18

**authorization even if the employee acts with a fraudulent intent.** (Emphasis added) Id at 787.

In this case, the Government does not argue that Mr. Kane had no permission to use the video poker game nor does the Government argue that Mr. Kane's use of the video poker games was without authorization. Because there were no restrictions on Mr. Kane's access to the video poker games, under this specific portion of the statute, and pursuant to the Brekka, and Nosal, cases, it is impossible for Mr. Kane to have "exceeded his authorized access" even if he had a fraudulent intent! This is the law in the 9th Circuit.

**The logic and the case law is very simply.  One cannot "exceed authorized access" to a computer when an individual's access is unlimited 24 hours a day, 7 days a week and there is no limitations or restrictions placed on a person's access.** In this case, there were never any limitations placed on Mr. Kane's access to the video poker game. The casinos never posted any instructions, limitations, rules, or in any way restricted the players access, method of play, hours of play, time of day of play, type of play, or in any way restricted whatsoever an individual's access to a video poker game. In other words, there were no warnings, signs, restrictions or any other advance notice that indicated that you couldn't press buttons on the machine in a certain way or that you had to play a machine in a certain fashion and given the fact that there was no restricted use or limitation of use imposed upon Mr. Kane by the casinos, it is impossible in the 9th Circuit after the very specific rulings in the Brekka case and the Nosal case for the Defendant to have "exceeded his authorized access" under the Computer Fraud and Abuse Act.

The Government's argument that the Defendants' access to the video poker games were somehow "restricted" by locking the cabinet, or by employee security guards (See Government's response page 9, lines 11 and 12) makes absolutely no sense to the facts in this

19

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

case.  The Defendants did not break into any locked cabinets, they were never told or informed by any security personnel that they could not play the video poker game and the Government's admission that "of course, Defendants were authorized to access and play video poker on the gaming machines" (See Government's Response page 6-7) makes it readily obvious and clear that the Defendants had unlimited access to the video poker games and that this unlimited access was never "restricted" or "limited" in any way, shape or form. Because of this Mr. Kane could not, in violation of the Computer Fraud and Abuse Act, have "exceeded his authorized access".

V.

## THE COMPUTER FRAUD AND ABUSE ACT IS UNCONSTITUTIONALLY VAGUE

The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  See Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed 2d 903 (1983).

The Court in Nosal specifically described "two lines of diverging case law" on the issue of what "exceeded authorized access" means.  Id at 784.

In the 9th Circuit, when you compare the Brekka and Nosal opinions and the divergent interpretation of what "exceeding authorized access" means in the different circuits it is readily apparent that the statute is void for vagueness.

A statute imposing criminal liability "according to the terms of Employers computer access restrictions" does not give fair notice of what conduct is prohibited, because employers computer access restrictions are not necessarily drafted with the definiteness or precision that would be required for a criminal statute.  Id. Nosal at 790

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

In this case, the casino imposed absolutely no restrictions or limitations on the use of Mr. Kanes' ability to play the video poker games. He had unlimited access. The reason the statute is void for vagueness is because under the laws set forth in the <u>Nosal</u> case, if the casino would have imposed a restriction that an individual could only play for 15 minutes at a time and they continued to play after 15 minutes, this would constitute a violation of the Computer Fraud and Abuse Act. This is just one example of millions of different restrictions and/or limitations that could be placed on a computer by an employer or in our case, a casino when an individual accesses a computer. The "conduct that is prohibited" could be anything and would encourage arbitrary and discriminatory enforcement and change from day to day, place to place and state to state. Indeed, the 9th Circuit acknowledges that there are "two lines of diverging case law on the issue". One simply needs to read the dissent in <u>United States v. Nosal</u>, 642 F.3d 781 (2011) and the case law in the different circuits on this issue, and it will become readily obvious that the statute is void for vagueness. Simply, you can not make felons out of individuals using their computers in violation of an employer's "computer access restrictions".

## CONCLUSION

A video poker game is not a "computer" under the Computer Fraud and Abuse Act. John Kane did not "hack into" a computer. The purpose of the Computer Fraud and Abuse Act was to "curve computer hacking". John Kane did not download any email, print out any confidential information, interrupt interstate commerce, disturb the United States or any financial institution within the United States and never hacked into a drive which he was not authorized to access, thus constituting a "computer crime" which Congress intended to prohibit.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

The Government concedes that the Defendants had unlimited access 24 hours a day, 7 days a weeks to the video poker games.  Nowhere in the Government's response does the Government argue that this unlimited access was "restricted" or "limited" other than to suggest that the casinos employed security guards and "locked cabinets" and that this somehow restricted the Defendants access.  As set forth in the Brekka case it is a fundamental principle of law that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed.  Criminal statutes should not be interpreted in surprising and novel ways by imposing unexpected burdens on Defendants.  Any ambiguity must be construed against the Government.  Id at 1134-1135.

As can readily be seen, given the facts of this case, it is legally impossible for John Kane to have committed a crime under the Computer Fraud and Abuse Act because a video game is not a computer, it is not a protected computer, there were no restrictions or limitations placed upon the Defendants use of the game and the Defendants access, as conceded by the Government, was unlimited.

As stated in Nosal, in the 9th Circuit, as long as Mr. Kane had permission to use the "computer" (video game) for some purpose, Mr. Kane accesses that computer (video game) with authorization even if Mr. Kane **acts with a fraudulent intent.**  Id at 787.

DATED this *16* day of February, 2012.

Law Office of
ANDREW M. LEAVITT, ESQ.

*/s/ Andrew M. Leavitt*

_____
ANDREW M. LEAVITT, ESQ.
Nevada Bar # 3989
633 South Seventh Street
Las Vegas, Nevada 89101

Andrew M. Leavitt
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

22

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that she is an employee of the Law Office of Andrew M. Leavitt, Esq., and is a person of such age and discretion as to be competent to serve papers.

That on February *16*, 2012 she served an electronic copy of the above and foregoing *REPLY TO UNITED STATES RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS,* by electronic service (ECF) to the person named below:

DANIEL G. BOGDEN
United States Attorney
MICHAEL CHU
Assistant United States Attorney
333 Las Vegas Blvd. So., 5th Floor
Las Vegas, NV 89101

RENE L. VALLADARES
Federal Public Defender
SHARI L. KAUFMAN
Assistant Federal Public Defender
411 E. Bonneville, Ste 250
Las Vegas, NV 89101

*/s/ Lettie Herrera*
_____
Employee of the
Law Office of Andrew M. Leavitt, Esq.

ANDREW M. LEAVITT
ATTORNEY AT LAW
633 South Seventh Street
Las Vegas, Nevada 89101
Tel.: (702) 382-2800
Fax: (702) 382-7438

23